UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MICHAEL S. PASCAZI,

                Plaintiff,

     -against-

PETER M. RIVERA in his official capacity as
NEW YORK STATE COMMISSIONER OF
LABOR,

                Defendant.

------------------------------------------------------------ X

13-cv-9029 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Attorney Michael S. Pascazi ("Pascazi") brings this lawsuit *pro se* to enjoin enforcement of two administrative orders against him. Defendant Peter M. Rivera, New York State Commissioner of Labor (the "Commissioner") moves to dismiss on the grounds of res judicata and failure to state a claim upon which relief may be granted. For the following reasons, the Commissioner's motion to dismiss is GRANTED.

## BACKGROUND[1]

    Pascazi brings this action to enjoin the enforcement of two administrative orders (the "Determinations") finding that his company, Fiber Optek Interconnect Corp. ("Fiber Optek"), willfully violated New York's Prevailing Wage Law, N.Y. Labor Law Art. 8, §§ 220-224 (the

---

[1] As the Court is required to do on a motion to dismiss, the Court takes the factual allegations in the First Amended Complaint as true. Furthermore, the Court takes judicial notice of the documents attached as exhibits A-E and G-J to the Declaration of Seth Kupferberg, ECF No. 18, to establish the facts of the proceedings reflected therein, what was argued, and what was held, but not for the truth of the matters asserted in those proceedings. *See LaFleur v. Whitman*, 300 F.3d 256, 267 (2d Cir. 2002) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *see also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007).

"PWL"). (Def.'s Mem. at 1, ECF No. 19.)

Pazcazi was the president and 50% owner of Fiber Optek at all relevant times prior to its dissolution.[2] Fiber Optek performed cable installation work on both private projects and public work projects. In 1999 and 2001, one or more Fiber Optek employees complained to the Bureau of Public Work (the "Bureau") of the New York Department of Labor (the "NYDOL") about their wages for public work projects, prompting the Bureau to commence an investigation into whether Fiber Optek had violated the PWL with respect to eight projects. (Kupferberg Decl. Ex. A app. at 12-13, ECF No. 18-1 [hereinafter Determination 1]; Kupferberg Decl. Ex. B app. at 3-4, ECF No. 18-2 [hereinafter Determination 2].)

At the conclusion of the investigation, two hearings were conducted. (Determination 1 app. at 1-3; Determination 2 app. at 1-4.) The first hearing focused on one project and took place on seven hearing days between September 17, 2003 and December 15, 2003. (Pl.'s Opp. at 4, ECF No. 22.) The second hearing focused on all eight projects and took place on 16 hearing days between August 7, 2006 and March 10, 2010. (*Id.*) Pascazi personally appeared at the hearings, presented evidence, and submitted post-hearing written argument. (Determination 1 app. at 3; Determination 2 app. at 2.)

Prior to the conclusion of the hearings, Pascazi filed two actions in the Southern District of New York to enjoin the NYDOL proceedings, *see Fiber Optek Interconnect Corp. v. N.Y.S.*

---

[2] Although this fact is not expressly set forth in Pascazi's pleadings, Pascazi has admitted this fact in representations to the Court during a pre-motion conference (Tr. of Mar. 20, 2014 Proceedings before Hon. Nelson S. Román at 8:6-17, ECF No. 10), has made arguments in his opposition papers that presume his past ownership (*see* Pl.'s Opp. at 17-18, ECF No. 22), and has failed to dispute his past ownership despite the Commissioner's repeated characterizations of him as such. Furthermore, there may be other, independent bases for the Court's judicial notice of this fact because Pascazi has admitted his ownership in numerous filings in Fiber Optek's bankruptcy proceeding. *See, e.g.*, *Landow v. Wachovia Sec., LLC*, 966 F. Supp. 2d 106, 119-20 (E.D.N.Y. 2013) (citing cases establishing that judicial notice may be taken of a party's admissions in prior proceedings that contradict that party's assertions of fact under certain circumstances). The Court also notes that if Pascazi were to dispute this fact, litigation of the fact would be precluded by collateral estoppel for the reasons indicated in Part I, *infra*.

*Comm'r of Labor*, No. 03-cv-7374 (S.D.N.Y. filed Sept. 19, 2003); *Pascazi v. Angello*, No. 04-cv-8896 (S.D.N.Y. filed Nov. 10, 2004), one of which he appealed to the Second Circuit, *see Pascazi v. Angello*, No. 06-5108-cv (2d Cir. filed Nov. 3, 2006), and a lawsuit in New York Supreme Court for a judgment in the nature of prohibition, *see Fiber Optek Interconnect Corp. v. N.Y.S. Comm'r of Labor*, Index No. 5942/2003 (N.Y. Sup. Ct. filed Dec. 3, 2004).  Also during the pendency of the proceedings, Pascazi caused Fiber Optek to go into bankruptcy, *see In re Fiber Optek Interconnect Corp.*, No. 05-30045-cgm (Bankr. S.D.N.Y. filed Feb. 16, 2005), and moved the bankruptcy court to hold the NYDOL in contempt for continuing with the administrative hearings purportedly in violation of the automatic bankruptcy stay, *see In re Fiber Optek Interconnect Corp.*, Nos. 09-cv-8827, 09-cv-9123, ECF No. 13 (S.D.N.Y. Sept. 28, 2010). All of Pascazi's attempts to delay or enjoin the administrative hearings failed.

The Determinations found that Fiber Optek had paid workers less than the applicable prevailing wages on seven of the eight[3] projects in violation of the PWL.  (Determination 1 app. at 23-25; Determination 2 app. at 14.)  Accordingly, the Determinations found Fiber Optek liable for the total amount of unpaid wages on certain projects, plus statutory interest at 16% from the date of each underpayment.  (Determination 1 app. at 23-25; Determination 2 app. at 14.)  The Determinations also found that Fiber Optek's violation was "willful" because the Bureau advised Pascazi personally of the proper employee classifications and applicable wage rates, but Pascazi disregarded the advice.  (Determination 1 app. at 11.)  It was further established that Fiber Optek's certified payroll records falsely reported a rate that was different than the rate actually paid to individuals.  (*Id.* app. at 19.)  The Determinations found that Pascazi managed the offices and books of Fiber Optek, made hiring and firing decisions, set workers' pay rates, and was

---

[3] The hearing officer determined that one of the projects was not a public work project subject to the PWL. (Determination 1 app. at 12-13.)

responsible for verifying the accuracy of time cards.  (*Id.* app. at 10; Determination 2 app. at 6-7.)

At the conclusion of the administrative proceedings, Pascazi initiated a proceeding under Article 78 of the New York Civil Practice Law and Rules ("CPLR") to review the Determinations (the "Article 78 proceeding").  *See Pascazi v. Gardner*, 966 N.Y.S.2d 528 (App. Div.), *appeal dismissed*, 996 N.E.2d 907 (N.Y. 2013).  Pascazi raised a wide range of arguments at the Article 78 proceeding including that:

- the federal Telecommunications Act preempts the PWL;
- Pascazi was denied a constitutional right because the FCC was the only tribunal that could hear his preemption argument based upon the Telecommunications Act;
- the federal Labor Management Relations Act (the "LMRA") preempts the PWL;
- the PWL violates the Dormant Commerce Clause;
- Pascazi did not receive due process because the hearing officer purportedly applied a "substantial evidence" standard;
- Pascazi did not receive due process because the hearing officer was substituted;
- there was insufficient evidence to support the Determinations;
- the proceedings were untimely;
- the interest award was arbitrary and capricious because the Determinations failed to set forth precise calculations;
- certain projects were nonpublic projects to which the PWL does not apply.

(*See* Kupferberg Decl. Ex. C, ECF No. 18-3.)

The Appellate Division rejected Pascazi's arguments and confirmed the Determinations, *see Pascazi*, 966 N.Y.S.2d at 532, Pascazi appealed, and the New York Court of Appeals summarily dismissed the appeal on the ground that no substantial constitutional question was directly involved, *see Pascazi*, 996 N.E.2d at 907.

The Commissioner has not yet sought to enforce the Determinations against Pascazi. Such enforcement is governed by N.Y. Labor Law § 220-b(2)(g), which provides:

> When a final determination has been made in favor of a complainant and the contractor or subcontractor found violating this article has failed to make payment

4

> as required . . . the fiscal officer[4] may file a copy of the order of the fiscal officer containing the amount found to be due with the county clerk of the county of residence or place of business of any of the following:
> . . .
> (ii) . . . any of the five largest shareholders of the contractor or subcontractor, as determined by the fiscal officer; or
> (iii) any officer of the contractor or subcontractor who knowingly participated in the violation of this article.

N.Y. Labor Law § 220-b(2)(g). Such a filing has the "full force and effect of a judgment duly docketed in the office of such clerk" and can be enforced pursuant to the CPLR provisions for enforcing money judgments. *Id.*

Pascazi seeks to enjoin prospectively enforcement of the Determinations against him. His First Amended Complaint asserts numerous purported bases for his requested relief, styled as four "counts." (*See* Am. Compl. ¶¶ 94-115.) Count 1 sounds in statutory construction. It argues that § 220-b(2)(g) should be construed such that it excludes from enforcement past shareholders who no longer hold shares of the contractor. (*Id.* ¶¶ 94-97.) Count 2 argues that enforcement of the Determinations against Pascazi would violate the Due Process Clauses of the U.S. and N.Y.S. Constitutions because of the lack of pre-deprivation process, vagueness, and overbreadth. (*Id.* ¶¶ 98-104.) Count 3 argues that enforcement would impose upon Pascazi a sanction in violation of the Excessive Fines Clauses of the U.S. and N.Y.S. Constitutions. (*Id.* ¶¶ 105-12.) Count 4 asserts a cause of action under 42 U.S.C. § 1983 for the aforementioned purported constitutional violations. (*Id.* ¶¶ 113-15.) Finally, Pascazi's opposition papers assert the additional claims not raised in the First Amended Complaint that the purported use of a "substantial evidence" standard during the administrative hearings denied him due process (Pl.'s Opp. at 24-25) and that the PWL is preempted by the Employee Retirement Income Security Act ("ERISA") (*id.* at 11-15).

---

[4] The "fiscal officer," in all respects relevant to this action, is the Commissioner.

**STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide grounds upon which their claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In applying this standard, a court should accept as true all well-pled factual allegations, but should not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*  A court should give "no effect to legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twomblv*, 550 U.S. at 555).

**DISCUSSION**

All of Pascazi's claims must be dismissed because they are barred by res judicata, and, in the alternative, because they are wholly lacking in merit.

**I.       Res Judicata[5]**

Under the full faith and credit doctrine, federal courts must accord final judgments of state courts the same preclusive effect that such judgments would have in the state courts.  *See* 28 U.S.C. § 1738.  Under New York law, "once a claim is brought to a final conclusion, all other

---

[5] The Court uses the phrase res judicata to refer to the concept of claim preclusion, distinct from issue preclusion or collateral estoppel.

6

claims arising out of the same transaction or series of transactions are barred, even if based upon different theories." *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981). Successive litigation based on the same or connected transactions is barred "if (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action." *People v. Allied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008). Even in a § 1983 case, preclusive effect is given to state-court judgments as to both issues that were "actually litigated" and issues that "could have been raised but were not actually raised." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81-82 (1984); *Allen v. McCurry*, 449 U.S. 90 (1980). The instant action and Pascazi's Article 78 proceeding obviously concern the same transactions, and Pascazi was a party to the Article 78 proceeding.[6]

Pascazi's response is two-fold. First, Pascazi argues that he could not have raised a challenge to § 220-b(2)(g) at the time of the administrative hearings or the Article 78 proceeding because it was unclear whether the Commissioner was going to enforce the Determinations against Pascazi. This argument does not withstand scrutiny. At least as early as the Article 78 proceeding, Pascazi knew or should have known that, with Fiber Optek in bankruptcy, the only avenue available to satisfy the Determinations would be § 220-b(2)(g) enforcement against Fiber Optek's 50-50 owners—Pascazi and Frank Zarzeka, Jr. *Cf. N.Y.S. Elec. & Gas Corp. v. Saranac Power Partners L.P.*, 117 F. Supp. 2d 211, 244 (N.D.N.Y. 2000), *aff'd*, 267 F.3d 128 (2d Cir.

---

[6] Although the Second Circuit has in some circumstances concluded that the doctrine of claim preclusion does not apply when an unsuccessful Article 78 plaintiff seeks § 1983 relief in federal court because "a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in subsequent section 1983 litigation," *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004) (citing *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986)), this argument applies only "if the initial forum did not have the power to award the full measure of relief sought in the later litigation," *Davidson*, 792 F.2d at 278. Here, because Pascazi does not seek damages, the Article 78 proceedings could have provided all the relief sought. *Johns v. Rampe*, 333 F. App'x 644, 646 (2d Cir. 2009). Thus, it is appropriate to analyze claim preclusion in the case at bar.

2001) (rejecting plaintiff's argument that preclusion should not apply because plaintiff could not have raised the issues in a prior proceeding, reasoning: "It is apparent that [the parties] were always aware of the risk that [plaintiff] might find itself in the very circumstances confronting it today.  It is only the degree to which the risk has manifested itself that is new.").  Moreover, were Pascazi's argument valid, this very lawsuit would be unripe because the Commissioner has still taken no action to enforce the Determinations against Pascazi.  As the Commissioner points out, the issue of Pascazi's liability was no less ripe at the time of the hearings than the issue of Fiber Optek's liability.

Furthermore, there is no reason to believe that the hearing officers in the administrative proceedings could not have decided Pascazi's arguments because they are based on the U.S. or N.Y.S. Constitutions.  The hearing officer in one of the Determinations devoted pages of discussion to Pascazi's constitutionally based LMRA preemption, Telecommunications Act preemption, and Commerce Clause arguments.[7]

Likewise, the Appellate Division certainly could have heard Pascazi's arguments. Individuals who bring Article 78 proceedings to challenge determinations against them are free to raise constitutional claims in such proceedings.  *See, e.g.*, *Solnick v. Whalen*, 401 N.E.2d 190, 194-95 (N.Y. 1980); *Press v. County of Monroe*, 409 N.E.2d 870, 872-74 (N.Y. 1980); *see also In re Chaitan*, 517 B.R. 419, 430 (Bankr. E.D.N.Y. 2014) ("An Article 78 petition and hearing

---

[7] Pascazi cites *Patrick Dev. Inc.*, Prevailing Rate Case 06-05913 (N.Y.S. Dep't of Labor Oct. 29, 2009), purportedly for the proposition that an administrative hearing officer cannot decide issues relating to § 220-b(2)(g).  *Patrick Development* simply does not stand for the proposition Pascazi submits.  In that case, the parties had asserted arguments concerning the willfulness of respondents' officers' conduct.  Although the parties framed these arguments in terms of § 220-b(2)(g), willfulness is also relevant to whether a respondent should be barred from public work projects under a different subsection, § 220-b(3)(b)(1).  The hearing officer acknowledged this imprecision and noted that it would consider the parties' willfulness arguments in the context of § 220-b(3)(b)(1), as the question of enforcement under § 220-b(2)(g) was not before it.  This is a far cry from holding that a genuine challenge to § 220-b(2)(g)—other than with respect to willfulness—would be outside of the hearing officer's jurisdiction.

could have resolved [petitioner's] constitutional complaints by granting mandamus relief."). In fact, Pascazi advanced three preemption arguments, several due process arguments, and a Commerce Clause argument in the Article 78 proceeding. Moreover, some of Pascazi's present arguments are identical to arguments that the Appellate Division heard and rejected—for example, that the substantial evidence standard violates due process and that the Determinations are deficient because they fail to set forth precise calculations of interest. *Cf. Hayden v. Hevesi*, No. 05-CV-294S, 2011 WL 4962262, at *5 (W.D.N.Y. Oct. 18, 2011). "This is the situation—the relitigation of claims already decided under constitutionally adequate circumstances—that the Full Faith and Credit Statute seeks to avoid." *Giakoumelos v. Coughlin*, 88 F.3d 56, 61 (2d Cir. 1996).

Second, Pascazi argues that the administrative hearings and Article 78 proceeding should have no preclusive effect because Pascazi faced a higher burden of proof in those proceedings. Pascazi submits that the Commissioner was required to prove his administrative case by "substantial evidence." By contrast, here Pascazi must establish his case by a "preponderance of the evidence," which is less onerous than opposing a substantial evidence burden.

Analyzing the leading New York Court of Appeals cases on issue preclusion, the Second Circuit has concluded that even "a shift in the burden of proof is not dispositive as to whether collateral estoppel can be applied." *Constantine v. Teachers Coll.*, 448 F. App'x 92, 94-95 (2d Cir. 2011); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 732 (2d Cir. 2001). Courts in this Circuit routinely give preclusive effect to the decisions of Article 78 courts in similar circumstances. *See, e.g.*, *Genova v. Town of Southampton*, 776 F.2d 1560, 1561 (2d Cir. 1985) (rejecting appellant's argument that "he is not . . . precluded . . . because he was in a 'defensive' posture in the Article 78 proceeding, but is in an 'offensive' posture in his § 1983

law suit"); *Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 787 (S.D.N.Y. 2003). The different standard of proof argument is particularly unpersuasive here, because Pascazi asserts purely legal arguments, not factual disputes that would be subject to evidentiary standards. Accordingly, the instant claims are barred by res judicata.

## II.   Merits

Even if this Court were to find res judicata inapplicable, the Court would still grant the Commissioner's motion to dismiss on the merits.

### A.   Count 1: "Plaintiff is Not a Top Five Shareholder"

Pascazi's first Count alleges that § 220-b(2)(g) is "not impressible upon Plaintiff" because Pascazi "*is* not a top five shareholder" or "an officer . . . found . . . to have knowingly participated in a violation." (Am. Compl. ¶¶ 95-97 (emphasis added).) The relevant language of that subsection provides that the Determinations may be filed in the county clerk's office in the county in which "any of the five largest shareholders of the contractor or subcontractor, as determined by the fiscal officer," reside. Pascazi claims that he falls outside of this definition because he is not *currently* a top five shareholder—Fiber Optek no longer exists—despite his 50% ownership of Fiber Optek in the past.

Such a construction, however, is unreasonable. The statute conspicuously does not invoke any timeframe for assessing shareholder status—neither the time of violation nor the time of enforcement—an omission this Court finds significant. *See Walker v. Town of Hempstead*, 643 N.E.2d 77, 79-80 (N.Y. 1994); *Patrolmen's Benevolent Ass'n of the City of N.Y. v. City of New York*, 359 N.E.2d 1338, 1340-41 (N.Y. 1976) ("[W]here as here the statute describes the particular situations in which it is to apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded." (internal quotation marks omitted)). And even if the Court were to construe the statute to imply a particular point in time

10

(which is unnecessary), the time of enforcement would be a dubious construction, because it would incentivize controlling shareholders to sidestep liability by bankrupting the entity (as Pascazi has done), dissolving the entity by some other means, or otherwise disposing of their holdings. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (rejecting a proposed statutory construction in part because it would have created perverse incentives inconsistent with the purpose of the provision); *In re Osei*, 389 B.R. 339, 355 (Bankr. S.D.N.Y. 2008).

If the Commissioner were to enforce the Determinations against Pascazi, Pascazi would meet the definition of "any of the five largest shareholders of the contractor" because he was, at all relevant times, 50% owner of Fiber Optek. Accordingly, Count 1 must be dismissed.[8]

B. Count 2: "Violation of Due Process"

Count 2 alleges that enforcing the Determinations against Pascazi would deprive him of a property interest (1) "without a modicum of legal process afforded Plaintiff," and (2) pursuant to a statute that is unconstitutionally vague.

1. *Procedural Deficiencies*

Pascazi's second claim, that enforcement would result in deprivation without "a modicum of legal process," does not withstand scrutiny. Pascazi alleges that the filing of the Determinations against him under § 220-b(2)(g) would deprive him of a property interest because they would encumber his property as a lien. Assuming this is a protectable property interest, the remaining question is "what process [is] his due*." Logan v. Zimmerman Brush, Co.*, 455 U.S. 422, 428 (1982); *Rosu v. City of New York*, 742 F.3d 523, 526 (2d Cir.) *cert. denied sub nom. Rosu v. City of New York, N.Y.*, 135 S. Ct. 710 (2014). To answer this question the Court

---

[8] N.Y. Business Corporation Law § 1006(b)—which Pascazi baldly mischaracterizes as relieving shareholders of liability for any corporate liabilities that "attached" after dissolution unless such attachment was a "foregone conclusion" prior to dissolution (*see* Pl.'s Opp. at 17-18)—is not to the contrary. The claims here existed before dissolution and "New York law is clear that shareholders can be held liable for claims against dissolved corporations." *Hartley v. Esposito*, 479 B.R. 635, 640 (S.D.N.Y. 2012) (internal quotation marks omitted).

11

turns to the following factors:  "(1) the private interest affected by the official action; (2) the risk of erroneous deprivation under the challenged governmental course of action and the probable value of providing additional procedural safeguards, and (3) the government's interest." *Rosu*, 742 F.3d at 526; *see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Sections 220(8) and 220-b(2)(g) of the PWL, together with the N.Y. State Administrative Procedure Act §§ 301-308 and the N.Y. Compilation of Codes, Rules & Regulations, Title 12, §§ 701.1-701.13, set forth the procedural framework governing determinations of contractors' compliance with the PWL.  Section 220(8) provides that the Commissioner must hold a hearing, of which notice must be served upon "any person affected thereby." N.Y. Labor Law § 220(8). Service must be made by personal service or by mail, at least 30 days before the hearing "whenever possible," and must state *inter alia* the date and time of the hearing, the name of the hearing officer, the nature of the charges, and the applicable sources of law.  N.Y. Comp. Codes R. & Regs. tit. 12, § 701.4; N.Y. A.P.A. § 301(2).  Limited pre-hearing document discovery is available to the employer.  N.Y. Comp. Codes R. & Regs. tit. 12, § 701.6.  Parties are "accorded full opportunity to present evidence and written and oral argument," have the right to call, examine, and cross-examine witnesses, and may request that the hearing officer issue nonparty subpoenas for testimony or documents.  *Id.* § 701.9; N.Y. A.P.A. §§ 301(4), 304(2)-(3), 306.  Next, "any party aggrieved" by a decision of a hearing officer may seek Article 78 review directly in the Appellate Division of the New York Supreme Court.  N.Y. Labor Law § 220(8). After all appeals are concluded, § 220-b(2)(g) authorizes the Commissioner to file an order with the county clerk in *inter alia* the county of residence of any of the "top five shareholders."  *Id.* § 220-b(2)(g). Within five days of such a filing, the Commissioner must "provide notice thereof to the . . . top five shareholders," any of whom "may contest the filing on the basis that [he or

she] is not a . . . top five shareholder." *Id.* That section goes on to require the fiscal officer to withdraw the filing in the event that the person contesting the filing is not subject to § 220-b(2)(g). *Id.*

Pascazi attended 23 days of hearings and submitted evidence and written argument. Pascazi had ample opportunity to contest Fiber Optek's liability as well as his own status as a top five shareholder, as both issues were required to be adjudicated, and were actually adjudicated, in the proceeding. Pascazi also had the benefit of an Article 78 proceeding in the Appellate Division. Finally, if and when the Commissioner files the Determinations against Pascazi, Pascazi will have yet another opportunity to contest his status as a top five shareholder. Pascazi contends that due process requires an additional hearing after the Article 78 process is complete, but before the Order is filed in the county clerk's office, to provide Pascazi the opportunity to contest his status as a shareholder and to collaterally attack the Determinations. Not so. Because Pascazi has already had the benefit of extensive procedural process,[9] an additional hearing would be of very little value and the risk of erroneous deprivation is minute. "Generally, due process requires that a state afford persons 'some kind of hearing' prior to depriving them of a liberty or property interest." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299 (1981)). The sum total of process that Pascazi has and will receive far exceeds constitutional mandates.[10] *See CNP Mech., Inc. v. Alund*, No. 04-CV-6593, 2007 WL 3565587, at *6 (W.D.N.Y. Nov. 15, 2007) (finding that the administrative hearing and Article 78 proceeding provided for in the PWL afforded adequate

---

[9] To emphasize this point, the Court notes that it has not even factored into this analysis the substantial amount of additional process that Pascazi extracted over the history of this dispute, including four separate actions in which he raised various arguments challenging the NYDOL's proceedings.

[10] To the extent that Pascazi advances other supposed constitutional infirmities associated with the post-deprivation review process (*e.g.*, Am. Compl. ¶¶ 59-63), any such infirmities are irrelevant because the pre-deprivation procedures standing alone satisfy due process.

procedural due process protection of any implicated property or liberty interest).  Even if, under some remote readings of the PWL's procedural framework, a hypothetical shareholder might one day be afforded less pre-deprivation process, Pascazi is not that shareholder.

       2.      *Vagueness*

Pascazi's vagueness arguments are that § 220-b(2)(g) "does not inform a purported top five shareholder what is required of him/her such that he/she may act accordingly to avoid coming within the ambit of the section," and that the provision fails to guide the Commissioner sufficiently to protect against arbitrary or discriminatory enforcement.  Respectfully, this is nonsense.  The PWL and regulations promulgated thereunder offer contractors very clear instruction on how to pay their workers.[11]  Likewise, § 220-b(2)(g) details with specificity who may be held liable for an unpaid determination.  The Court fails to see the risk of arbitrary or discriminatory enforcement of which Pascazi forewarns.

Pascazi's remaining vagueness arguments appeal to several hypothetical scenarios that are so far removed from the facts at issue that they, paradoxically, underscore the appropriateness of the Commissioner enforcing the Determinations against Pascazi personally in this case.  Section 220-b(2)(g) is not unconstitutionally vague as applied.[12]

---

[11] This argument is nonsensical for the additional reason that § 220-b(2)(g) imposes liability based on shareholder status, and not conduct.  Strict liability is not categorically unconstitutional.  (This observation also disposes with Pascazi's argument that he will be held liable without "proof of any wrongdoing" in violation of due process, and his derivative argument that the statute is unconstitutionally overbroad because it imposes liability upon persons who committed no wrongdoing.)

[12] Pascazi also argues that the Orders should not be enforced against him because they fail to set forth precise calculations for the interest amounts payable by Fiber Optek.  At the outset, Pascazi cites no authority for this argument, and the Appellate Division rejected it in his Article 78 proceeding.  Calculation of interest is ministerial.  Prevailing wage orders routinely leave interest to be calculated by the Bureau.  *E.g.*, *Astro Air Corp.*, Prevailing Rate Case No. 2011008760 (N.Y.S. Dep't of Labor May 5, 2014); *Conklin's Tech-Mech., Inc.*, Prevailing Rate Case No. 2010002963 (N.Y.S. Dep't of Labor Mar. 25, 2014); *Piazza Bros., Inc.*, Prevailing Rate Case No. 98006536 (N.Y.S. Dep't of Labor Mar. 12, 2014).  Indeed, the precise amount of interest will be unknown until the date of payment because interest continues to accrue while the liability is outstanding.

C.	Count 3:  "Violation of Excessive Fines Clauses"

A sanction violates the Excessive Fines Clause if it is "grossly disproportional to the gravity of [the] offense." *United States v. Bajakajian*, 524 U.S. 321, 339-40 (1998).  But not all types of sanctions implicate the Excessive Fines Clause.  "The Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government." *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 268 (1989); *see also Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 136 n.6 (2002).  Furthermore, the Excessive Fines Clause applies only to punishment—i.e., civil sanctions "that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes." *Austin v. United States*, 509 U.S. 602, 621 (1993).  That said, the Supreme Court recently found that a restitution award to be paid by one criminal defendant for losses collectively caused by thousands of independent actors may implicate the Excessive Fines Clause despite the fact that "[t]he primary goal of restitution is remedial or compensatory," not punitive.  *Paroline v. United States*, 134 S. Ct. 1710, 1726 (2014).  The *Paroline* Court reasoned that the restitution award in that instance was "imposed by the Government at the culmination of a criminal proceeding and require[d] conviction of an underlying crime."  *Id.*

The Determinations awarded three forms of relief:  back pay to the aggrieved employees; interest on that back pay, also payable to the aggrieved employees; and a civil penalty of 25% of back pay plus interest to be deposited in the New York State Treasury.  (Determination 1 app. at 24-25; Determination 2 app. at 14-15.)

Interest has traditionally been characterized as compensatory, not punitive.  *Citibank, N.A. v. Barclays Bank, PLC*, 28 F. Supp. 3d 174, 184 (S.D.N.Y. 2013) (referring to prejudgment interest).  Interest is not for the purpose of punishing a wrongdoer, but to "compensate . . . for the loss of use of money [a party] was owed during a particular period of time." *NML Capital v.*

15

*Republic of Argentina*, 952 N.E.2d 482, 494 (N.Y. 2011). The circumstances that led the *Paroline* Court to conclude that the restitution award in that case may have implicated the Excessive Fines Clause are not present here—there has been no criminal prosecution or conviction, nor are there a multiplicity of independent actors other than Pascazi whose wrongful conduct caused the losses at issue. The Court concludes that the interest portion of the award here is solely compensatory in nature and, accordingly, outside of the scope of the Excessive Fines Clause. *See, e.g.*, *United States v. Davis*, 648 F.3d 84, 96 (2d Cir. 2011) (finding the Excessive Fines Clause did not apply to a forfeiture that "was not part of a criminal prosecution," but was rather "a civil in rem proceeding" brought under customs law, which is "traditionally viewed as non-punitive"). By the same token, the back pay portion of the award is obviously compensatory.

Although the civil penalty is fairly characterized as punitive, Pascazi's Excessive Fines claim still must be dismissed in its entirety because the 25% penalty is not "grossly disproportional" to the offense. The penalty here is literally a fraction of the total amount of money that Fiber Optek kept from its employees, adjusted for the time value of money. As 50% shareholder of Fiber Optek at all relevant times, Pascazi received the benefit of wages that Fiber Optek kept from its employees. Furthermore, to the extent that Pascazi argues that a penalty in any amount would be disproportional because there was "zero finding of offensive conduct" attributable to Pascazi (Pl.'s Opp. at 23-24), that claim is belied by the Commissioner's findings that Pascazi set wage rates, was responsible for the accuracy of time cards, which resulted in falsified certified payroll records, and was personally advised by the NYDOL of the applicable

rates but disregarded that advice.[13]  Indeed, Pascazi's conduct formed the basis for the hearing officer's conclusion that Fiber Optek's violations were "willful."  Although it was not necessary to decide the legal issue of Pascazi's individual culpability, the hearing officer implied that, were it necessary to reach the issue, he would have found that Pascazi willfully violated the PWL. (*See* Determination 1 app. at 20 ("Were it necessary to find willful participation, I note that Mr. Pascazi was the corporate officer of Fiber Optek whom the Bureau specifically advised that electrician rates were the proper rates to be paid on the projects addressed herein.").)

        D.       Count 4:  Violation of 42 U.S.C. § 1983.

Count 4 alleges that Defendant, under color of state law, is depriving and will continue to deprive Pascazi of his constitutional rights as set forth in the Counts 1-3.  Because there has been no violation of Pascazi's "rights, privileges, or immunities secured by the Constitution and laws," *see supra* Parts II.A-C, there can be no claim under § 1983, *see* 42 U.S.C. § 1983.

        E.       Additional Arguments[14]

              1.      *ERISA Preemption*

Pascazi's argument that the PWL is preempted by ERISA ignores clear, controlling Second Circuit precedent to the contrary.  Pascazi argues that the PWL is preempted because it permits the Commissioner to pursue a company and its shareholders for failure to pay employees prevailing wages and supplements—which may in some circumstances include contributions to an ERISA plan.  The Second Circuit in *Burgio & Capofelice, Inc. v. N.Y.S. Department of Labor*, 107 F.3d 1000 (2d Cir. 1997), held that ERISA preemption does not apply where the NYDOL

---

[13] For clarity, the Court here takes judicial notice only insofar as the administrative record roundly disproves Pascazi's contention that there was no *finding* of offensive conduct attributable to Pascazi.  The Court may do so for the reasons explained in footnotes 1-2, *supra*.

[14] The Court notes that these theories are not pleaded in the First Amended Complaint.  To the extent that Pascazi might be seeking to further amend the Amended Complaint in order to properly plead these theories, leave to amend is denied as futile for the reasons set forth in this Part.  *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014) ("[L]eave to amend need not be granted where the proposed amendment would be futile.").

pursues a "total package enforcement" policy, whereby the employer is ordered to pay a total amount of compensation to workers, in any form. 107 F.3d at 1007-11 (distinguishing the total package approach from the "line item approach," which the Second Circuit had previously rejected in *General Electric Co. v. N.Y.S. Department of Labor*, 891 F.2d 25, 28-30 (2d Cir. 1989), because it prescribed the type and amount of an employer's contributions to a plan, the rules and regulations under which a plan operated, and the nature and amount of the plan benefits); *see also HMI Mech. Sys., Inc. v. McGowan*, 266 F.3d 142 (2d Cir. 2001). There is no suggestion that the NYDOL is pursuing anything but a total package enforcement policy, as approved by the Second Circuit, in this case. Accordingly, the enforcement of § 220-b(2)(g) against Pascazi does not violate the preemption provisions of ERISA.

       2.     *Substantial Evidence Standard*

Pascazi argues that the hearing officers' purported use of the substantial evidence standard,[15] rather than the preponderance of the evidence standard, denied him due process. The Court notes that the Appellate Division heard, considered, and rejected this precise argument in Pascazi's Article 78 proceeding. The substantial evidence standard has been upheld as constitutional in other contexts, *see, e.g.*, *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454, (1985) ("some evidence" standard constitutionally sufficient to support decision to revoke good time credits for prisoner); *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) ("substantial evidence" standard constitutionally sufficient to support decision to revoke disability pension). Pascazi's argumentation in his opposition brief is wholly conclusory, and the Court finds that the sanction involved here—a temporary ban from bidding on public work

---

[15] For the reasons set forth in the Commissioner's brief in the Article 78 proceeding (*see* Kupferberg Decl. Ex. D, at 27, ECF No. 18-4), it is unclear whether Pascazi is correct in asserting that the hearing officers even applied the substantial evidence standard.

contracts—does not raise the constitutional concerns of a "stigma-plus" case, as Pascazi argued in the Article 78 proceeding, *compare Miller v. DeBuono*, 689 N.E.2d 518, 520, 522 (N.Y. 1997) (finding the preponderance standard constitutionally mandated because the sanction at issue "publicly brand[ed] petitioner a patient abuser," banning her from employment in the residential health care industry and potentially preventing "future employment opportunities in any arena"); *Valmonte v. Bane*, 18 F.3d 992, 1004 (2d Cir. 1994) (registration as child abuser); *and Lee TT. v. Dowling*, 664 N.E.2d 1243, 1246 (N.Y. 1996) (same) *with Agnew v. N. Colonie Cent. Sch. Dist.*, 787 N.Y.S.2d 521, 522 (App. Div. 2005) (no stigma where teacher's aide was discharged for stealing money from a kindergarten classroom); *Williams v. Niccoletti*, 743 N.Y.S.2d 160, 161 (App. Div. 2002) (no stigma where discharge was for failing a drug test); *Malloch v. Ballston Spa Cent. Sch. Dist.*, 671 N.Y.S.2d 845, 847 (App. Div. 1998) (no stigma where school bus driver was discharged for reckless driving); *and Suitor v. Keller*, 684 N.Y.S.2d 454, 455 (App. Div. 1998) (no stigma where police officer was discharged for misconduct). Although not precisely on point, at least one court in this circuit has dismissed as a matter of law a stigma-plus claim brought by a contractor that was banned from public work contracts for "willful" PWL violations and falsifying payroll records. *See CNP Mech.*, 2007 WL 3565587, at *6. Pascazi was not denied due process.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 17 and to close this docket.

Dated:  February 26th 2015  
       White Plains, New York

SO ORDERED:

_____

NELSON S. ROMÁN  
United States District Judge